The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and this shall be heard. God save the United States of America and this Honorable Court. Please be seated. So before we begin, just on behalf of Judges Selle and Thompson and the First Circuit, I would like to thank Dean Jelnowski and the trustees for permitting us to come here and interacting with Rhode Island's next generation of lawyers. And to counsel who might have been inconvenienced by our meeting here today, I appreciate your patience. So we'll get down to work. The clerk will call the first case. Today's case will be called as previously announced and the times will be as allotted to counsel. The first case today is 14-1850, United States v. Louise E. Pabon, Jr. May it please the Court. Lisa Aitlin on behalf of Defendant Louise Pabon, Jr., I respectfully reserve two minutes of rebuttal time. Yes. Thank you. The district court abused its discretion when it imposed numerous conditions of supervised release that had no relation to the underlying offense of failure to register as a sex offender. In direct conflict with this court's recent holding in Del Valle Cruz and decisions from other circuit courts, including the Seventh Circuit's decision in Goodwin, which actually vacated similar conditions as this case under the more stringent plain error review. Mr. Pabon, in this case, had only one prior sexual offense involving a 14-year-old. I'm sorry? I have a question, please. Sure. When Mr. Pabon was originally convicted, did he undergo sex offender treatment at that time? No, he did not, and actually that's a valid point in this situation. Ten years ago, he received a conviction for a child situation where he was accused of kissing and fondling a 14-year-old non-female family member. In that case, he received an eight-year sentence. He served one year, and he did not receive sex offender treatment, nor did that case impose such stringent conditions about not being able to live with his own children, not being able to reside- Any type of counseling? I know specifically not sexual offender treatment. I don't believe he received any counseling in that case, Your Honor. But I do think it's relevant because now in this case, which is actually only a failure to register offense, he's now being punished and given treatment for a case that happened ten years ago. In that original case ten years ago, that court didn't think it was necessary to impose sex offender treatment or such stringent conditions about not being able to live with your own child. Mr. Pavone has never posed a danger to his own children or any other minor children. While he obviously has had issues with domestic violence against girlfriends and female adults, he's never had any issues of violence or sexual offense issues since that initial conviction. Which was with a 14-year-old girl who was the daughter of his live-in girlfriend? Who was his girlfriend, yes, correct. Yes. So he has had, in the past, an issue of sexual abuse with a child in his home. Correct. Much different than Del Valle Cruz, all right? He also has had, since the date of that offense, considering that he spent some time during the intervening years in prison, he's had a fairly impressive history of domestic violence. So to address your first concern, while the initial offense was not an incestuous offense, in other words, the conditions imposed with him not being able to live with his own children, the initial offense had nothing to do with an incestual relationship, nothing to do with any issues with male children. The conditions don't say that he can't live with his own children. The conditions say that he can't reside in a home, in a residence in which children live without the prior approval of the probation officer. Correct, but that gives a lot of authority about where he can live, and we still have- That's true, and if that authority is abused, there's a right of appeal from that. But the initial condition isn't even justified in the first place when this crime is failure to register as a sex offender. It's not a sex offender. No, no, but you want us to use tunnel vision and take that crime in a vacuum, and we can't. We've got to look, and precedent requires us to look, to the underlying sex offense and to the fact that we've got a known recidivist even on the failure to register. This wasn't a first failure to register. This is a second failure to register. Yes, we have a known recidivist of somebody who fails to register. Not a known recidivist of someone who continues to commit sex crimes. But the recidivism and the failure to register is a signal to the trial judge, a reliable signature that she's dealing with a defendant who has exhibited a disregard for the law, and she's got to expect that he will continue to exhibit that. But this court in Del Valle Cruz said there's no evidence that the presence of a child in the defendant's home contributes to the recidivism. That's true, because there, the defendant whose sex offense was well in the past and was not a sex offense of the magnitude of this had not occurred in the home. This offense, the underlying offense here, did occur in the home, and you don't think that's a significant distinction? But it's still remote. It's almost ten years old at this point. Yes, but most of the intervening ten years, he's been in prison. He's been in and out, and even with the prior failure to register offense, he was out and didn't harm any children, didn't present a danger to his own children or family members. Yeah, you talk about Del Valle Cruz, but the sex offense here is more recent than the sex offense in Mercado, where we did approve substantially this condition. The judge is in position. And I submit to you that one of the differences, important differences, between Del Valle Cruz and Mercado is that the trial judge in this case explained why she was imposing the conditions. The trigger in Del Valle Cruz was, as the panel pointed out, the trial judge made no explanation at all as to why the conditions were necessary. Here, we do have an explanation. What's wrong with the trial judge's explanation? Well, the trial judge's only explanation in this case is to keep Mr. Pabon from re-offending. She had a concern to protect the kids out there, and she said she commented on his anger issues. She never commented on his sexual impulse issues, on whether he needed sexual offender treatment. The purposes of sexual offender treatment were not met by her reasoning. Her reasoning was very short. And the idea of protecting the kids out there, that still was based on a 10-year-old, nearly a 10-year-old sexual offense. Now, when we're talking about re-offending, I think there comes attention now in the cases between Mercado, Del Valle Cruz, and the other jurisdictions. Are we talking about re-offending as a sex offender or re-offending as a failure to register as a sex offender? And I submit we're talking about a failure to register as a sex offender. So how does sexual offender treatment and keeping my client from his family and the other provision we haven't talked about, which is the no contact with any children unless there's some sort of incidental or inadvertent contact here. Counsel, let me, I'm not sure I heard you correctly. Let's put this case aside. You're saying that when a trial judge is setting conditions of probation or conditions of supervised release, as in this case, and the judge's concern is with the possibility of the defendant re-offending. That the trial judge is limited to consideration of the possibility of re-offending in the precise same offense or same type of offense for which he's being sentenced? No, I'm suggesting that- Of course not. It's re-offending, period. The conditions of supervised release are designed, are they not, to keep a defendant law abiding during the period of the release to help to reintroduce him in an appropriate way into society? Correct, but the whole point is that he's never shown a danger to re-offending as a sex offender. And the conditions imposed in this case are trying to prevent somebody from re-offending as a sex offender, not trying to be not re-offending for general criminal conduct. Thank you. Good morning. Donald Lockhart for the government. When you are trying to assess how detailed the district court's explanation was in this case, you actually have to look at the transcripts of two sentencings. Remember, there was the original sentencing and then there was the sentencing after remand. The defense in its briefing focuses almost entirely on the second sentencing, the one after the remand. But if you look at the earlier sentencing, you'll see that the district court's explanation was actually quite detailed at that sentencing. It was detailed also at the second, but you need to actually read the two in paramateria to get the full extent of the district court's explanation. Mr. Lockhart, but why sex offender counseling? There are a myriad of other counseling regimes that seem to me could be much more appropriate than sex offender, which requires an admission, if I understand it correctly, that you've committed a sex offense, and then focuses on those urges and avoidance of that kind of behavior. I mean, why not domestic violence counseling? Why not mental health counseling? Why this particular specialized counseling when nothing had happened in the intervening years? Well, because the original sex offense was a very serious one. It's been pointed out the defendant took advantage of his own girlfriend's 14-year-old daughter, and it was not just an isolated incident, as in the DelVal Cruz case, where the defendant pushed a 16- or 17-year-old girl up against the wall and kissed and touched her, was the underlying facts in that case. Here we have a defendant who's in an ongoing relationship with a 14-year-old girl, and that relationship involves, at the very least, fondling of breasts and fondling of buttocks. And if you look at Paragraph 29 of the PSR and you read it carefully, you'll see in between the lines that in all likelihood the relationship involved a lot more than just that. But we have a situation where the original sentencing judge didn't impose sex offender counseling and had that same evidence before it at the time of sentencing. Well, we actually don't know much about the record of the earlier case. Paragraph 29 of the PSR is the only source of information that I'm aware of concerning what the judge did or said, the state judge, in the original case. And for that matter, we don't even know whether in the state system, at least on the record we have before it, it's customary for defendants to receive that sort of condition. So it's a little bit speculative to place much weight on this factor of whether or not the state judge at the original sentencing had that even as an option. We just don't know. But what we do know is that the defense attorney— Sex offender counseling has been around any number of years, and certainly it was around 10 years ago. Well, that may be the case, but we just don't know whether and to what extent the judge had that as an option. I just don't know. I'm not familiar with the state system to know whether a state judge at that time, in a case like this, would have had that as an option. But what we do know is that the defense attorney in this case, at the trial level, actually recommended, affirmatively recommended, sexual offender treatment for his client. Now, he withdrew that concession ultimately when it came time for the actual sentencing in that case. But if you look at the record, even the defense attorney described the earlier crime as being a very serious crime, and even the defense attorney felt that it was important, these are his words, to impose that condition. Now, granted, in the interim, the defendant spoke with his attorney and said, I don't want it, so take that back. But it is somewhat revealing that even the defense attorney in this case felt that this was an important condition. And the other thing to notice is that even the district court judge, in imposing these conditions, made statements to the effect that they're not hard and fast. It may be that the defendant will be evaluated at some point by somebody who can evaluate his current condition. And based on that assessment, perhaps there won't be sex offender treatment. Perhaps it will only be one session, and then he'll be done with it. We just don't know to what extent this is even going to be a real burden on him at this point. Mr. Lockhart, along that line, what do we know about when this supervised release term is likely to commence? Right. Well, that's a little bit tricky because based on my recent investigation into what's happening in the state system, in the intervening period, the defendant committed violations of his state probation. He's now serving a state probation sentence. My understanding is that he's due to get out on that anywhere in the range of April to, I forget when, maybe summer of 2016. But the problem is that he also committed a new offense, allegedly. He's been charged with that in the state system. It's a domestic violence offense. And so he is, if convicted on those charges, likely to serve another period of incarceration. Now, a lot of these facts aren't in the record, so I won't go deeply into it. But it looks like, in some substance, it will be about a year, perhaps even more, before he recommences serving his term of federal supervisory. And how long has he got left to serve on his federal term? Well, he wasn't out for very long before he committed the new offenses and was locked up by the state. And the term is five years, so my best guess is somewhere around four years. I don't know the exact figure, but he didn't actually serve much time on federal supervised release before he violated the state probation conditions and committed the new state offense. So it looks like he has a ways to go there. Anyway, the main point from our standpoint is that this case is a much closer cousin to the Mercado case than it is to the DelVal-Cruz case. In this case, you have not just a home-based offense, not just the defendant exploiting a girl who was his own girlfriend's daughter, but you have a situation where the offense is more recent than the DelVal-Cruz offense. And it's also a situation where the district court gave a much fuller explanation for imposing the conditions of supervised release to begin with. As I understand it from the DelVal-Cruz opinion, the district court judge in that case gave utterly no explanation for imposing those conditions, whereas in our case the explanation would appear to be more robust than the one given by the district court judge in Mercado. So we think that this case is safely within the orbit of Mercado and really beyond the orbit of DelVal-Cruz. Now, there are a number of claims that were not preserved that are subject to plain error review. Those weren't discussed by the defense at oral argument. So unless there are any questions about those unpreserved claims, we'll rest on our brief. Thank you. Just to touch quickly on the counsel's suggestion that the first sentencing hearing somehow had more justification than the resentencing hearing. It's not true. In the first sentencing hearing, the court merely said it was, again, trying to prevent Mr. Pabon from reoffending and was way more concerned with mental health services.  In the second sentencing, the conditions were imposed and the sentencing ended, and then we went to resentencing. And certainly at resentencing, the focus, again, unfortunately, really wasn't why each condition was being imposed. There was no examination of Mr. Pabon and his situation and how the conditions would impact each one. I think there needs to be a case-specific, individualized, in-depth questioning about each condition, not just some general suggestion that mental health, anger issues, and reoffending somehow justify the implication of all these conditions. And I'd like to just one more time address that this no-contact provision, he's not allowed to be around any children under the age of 18 outside of the home unless somebody's been pre-approved to be with him. In other words, he can't go to church, he can't go to a grocery store, he can't go to a restaurant. This is a very serious infringement on Mr. Pabon's liberty interest, given that this, again, this case is merely a failure to register. I just felt that regardless of the home situation, that particular condition I find most troubling in this case is essentially he can't leave the house by himself because there are kids everywhere. And then we have this issue about comparing crimes. I will take the basis that all sex crimes against children, obviously, are serious. No one's taking that position. It then becomes a question of weighing how far in the past are we talking about holding a new defendant responsible for acts that were committed so long ago and there are no intervening acts opposing danger to children. In conclusion, this court really needs to reconcile the decisions of Del Valle Cruz, Mercado, Morales Cruz, along with the Goodwin and 3rd, 4th, 7th, 9th, and 10th Circuit decisions. We should no longer just wholeheartedly think that sex offender treatment should be placed as a condition where a defendant merely fails to register because that hasn't become a practice in this jurisdiction. In your main argument, you made a reference to incest. Do you have any science to support the implication that a person is less at risk of offending with respect to somebody in the family in circumstances like this? I personally do not. I've been reading certain studies, but there certainly isn't a correlation between a defendant who has a proclivity to commit a sex crime with a child that's not a family member and then making that connection that somehow that person then is going to commit incest or a homosexual act. Would you file a 28-J letter with citation to one or more of those studies so that I can look at them? Okay, sure. I'll take a look. Thank you.